IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JULIA BEATRICE KELEHER <br> Defendant. | CRIMINAL NO. 21-202-01 (FAB) <br><br> **RECEIVED AND FILED** <br> **JUNE 8, 2021** <br> **OFM** |

## PLEA AGREEMENT

The United States of America, Defendant, Julia Beatrice Keleher, and Defendant's counsel, Maria Dominguez, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

**1. Charges to which Defendant will Plead Guilty**

Defendant agrees to plead guilty to Counts One and Two of the Information. Count One alleges a conspiracy to commit wire fraud contrary to 18 U.S.C. § 1343, in violation of 18 U.S.C. § 371. Count Two alleges a conspiracy to commit honest services wire fraud contrary to 18 U.S.C. §§ 1343 and 1346, in violation of 18 U.S.C. § 371.

**2. Maximum Penalties**

The maximum statutory penalties for each offense alleged in the Information are a term of imprisonment not to exceed five years pursuant to 18 U.S.C. § 371; a term of supervised release of not more than three years pursuant to 18 U.S.C. §

3583(b)(2); a fine not to exceed $250,000 pursuant to 18 U.S.C. § 3571(b)(3); and a special monetary assessment of $100 pursuant to 18 U.S.C. § 3013(a)(2)(A).

### 3. Sentencing Guidelines Applicability

Defendant understands that the Court will impose sentence in accordance with 18 U.S.C. §§ 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to *United States v. Booker*, 543 U.S. 220 (2005). Further, Defendant acknowledges that parole has been abolished, and that the imposition of Defendant's sentence may not be suspended.

### 4. Special Monetary Assessment

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

### 5. Fines and Restitution

The Court may, pursuant to Section 5E1.2 of the Guidelines recommend Defendant to pay a fine, subject to the defendant's ability to pay. The Court may also impose restitution. Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500).

## 6. Rule 11(c)(1)(C) Warnings

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties have agreed to recommend to the Court a term of imprisonment of six months to be served at a Bureau of Prisons facility followed by a 12-month term of supervised release, which the defendant would serve under home confinement.

Having consulted the Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the parties also agree to recommend a fine of $21,000, which represents the value of the benefit Defendant received in connection with the offense alleged in Count Two of the Information. The parties also agree that no restitution is warranted.

Defendant understands that the Court may either accept or reject this sentencing recommendation, as more specifically described below:

(a) Should the Court accept the sentencing recommendation, the Court would sentence Defendant to the agreed upon sentencing recommendation;

(b) Should the Court reject the sentencing recommendation, the Court would allow the Defendant an opportunity to withdraw Defendant's guilty plea. In this event, should Defendant not withdraw the guilty plea, then the Court could dispose of the case less favorably toward Defendant than the plea agreement contemplated. Should the Court reject the sentencing recommendation, the United States would have the right to withdraw from the plea agreement entirely.

## 7. Sentence Recommendation

Having considered the Guidelines and all of the relevant factors enumerated in 18 U.S.C. § 3553(a), the parties agree to jointly recommend to the Court a term of imprisonment of six months to be served at a Bureau of Prisons facility followed by a 12-month term of supervised release, which the defendant would serve under home confinement.

Having consulted the Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the parties also agree to recommend a fine of $21,000, which represents the value of the benefit Defendant received in connection with the offense alleged in Count Two of the Information. The parties also agree that no restitution is warranted.

The parties agree that any recommendation by either party for a term of imprisonment below or above the stipulated recommendation will constitute a material breach of the Plea Agreement:

## 8. No Stipulation as to Criminal History Category

The parties do not stipulate as to any Criminal History Category for Defendant.

## 9. Waiver of Appeal

Defendant knowingly and voluntarily agrees that, if the sentence imposed by the Court is consistent a term of imprisonment of six months to be served at a Bureau of Prisons facility followed by a 12-month term of supervised release, which the defendant would serve under home confinement, a fine of $21,000 and no imposition of restitution, as recommended jointly by the parties, then the Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not

limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

### 10. No Further Adjustments or Departures

The United States and Defendant agree that neither party will seek any Guideline adjustments or departures that would result in a sentencing recommendation different from that to which the parties have stipulated. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 11. Satisfaction with Counsel

Defendant is satisfied with counsel, Maria Dominguez, Esq., Javier Micheo Marcial, Esq., and Carlos Andreu Collazo, Esq., and asserts that counsel have rendered effective legal assistance.

### 12. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:

    a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

b. If a jury trial were conducted, the jury would be composed of twelve lay persons selected at random. Defendant and Defendant=s attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification were shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it would have to consider each charge separately.

c. If a trial were held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

### 13. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 14. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant. It does not bind any other federal district, state, or local authorities.

### 15. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 16. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 17. Dismissal of Remaining Counts

Should Defendant comply with the terms of this Plea Agreement, the United States will move to dismiss any counts pending against Defendant in Criminal No. 19-431 (PAD) and in Criminal No. 20-19 (FAB).

### 18. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

## 19. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea, other than for the reasons set forth in Section 6 of this Agreement. In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea. Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Indictment, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

United States v. Julia Beatrice Keleher, 21-202 (FAB )

## 20. Felony Conviction

Defendant hereby agrees and recognizes that the plea of guilty in this case will be recognized as a felony conviction, which will result in the loss of certain rights, including but not limited to the right to vote in a federal election, to serve as a juror, to hold public office, and to lawfully possess a firearm.

W. STEPHEN MULDROW
United States Attorney

_____
Seth A. Erbe
Assistant U.S. Attorney
Chief, Financial Fraud and Public Corruption
Dated: 6/3/2021

_____
Alexander L. Alum
Assistant U.S. Attorney
Dated: 6-4-2021

_____
Jose Ruiz-Santiago
Assistant U.S. Attorney
Dated: 6-4-2021

_____
Maria Dominguez, Esq.
Counsel for Defendant
Dated: 6·2·2021

_____
Julia Beatrice Keleher
Defendant
Dated: 6/2/2021

USAO-DPR-Plea Agreement                                               Page | 9

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I fully understand this agreement and voluntarily agree to it.

Date: 6/2/2021

Julia B. Keleher
Julia Beatrice Keleher
Defendant

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 6-2-2021

Maria Dominguez
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, Defendant Julia Beatrice Keleher admits that she is guilty as charged in the Information and admits the following facts, which represent a non-exhaustive summary of the facts the United States would have proven beyond a reasonable doubt:

The Commonwealth of Puerto Rico was a self-governing territory of the United States of America. The Puerto Rico Department of Education (hereafter, the "PRDE") was organized under Article IV, Section 6 of the Constitution of the Commonwealth of Puerto Rico. The PRDE was responsible for the planning and administration of all public elementary, secondary, and some post-secondary education throughout Puerto Rico. The PRDE is, and at all times material to the Information was considered a State educational agency and local educational agency for purposes of administering federal financial assistance programs. The PRDE received federal benefits through various financial assistance programs funded by the United States Department of Education (hereafter, the "USDE"). The value of the federal benefits the PRDE received from the USDE exceeded $10,000 during the twelve months preceding December 31, 2018, and during the twelve months following December 31, 2018.

JULIA BEATRICE KELEHER was the Secretary of Education from in or about January 2017 until on or about April 1, 2019. As the Secretary of Education, she was paid a salary of $250,000 through a contract with Puerto Rico Fiscal Agency and Financial Advisory Authority, and was responsible for the management and

oversight of the PRDE, an agency with an average annual budget of 3.5 billion and approximately 50,000 employees. By virtue of her position, she was required to make decisions in the best interest of the people residing in the Commonwealth of Puerto Rico without regard to her own personal gain, or that of others.

## A. Individual C Subcontracting Scheme

On or about June 8, 2017, after COLÓN & PONCE, Inc. participated in the PRDE review process and was the lowest bidder, PRDE entered into a professional services contract (2017-AF0220) with COLÓN & PONCE, Inc., a for-profit corporation organized under the laws of Puerto Rico. This professional services contract referred to COLÓN & PONCE as the "Second Party" in the contract., to provide certain services. The contract allowed Colón & Ponce to invoice a total of $43,500.00 and had a duration of up to December 31, 2017. It contained the following provision at paragraph 24:

| Original Spanish language | English translation |
|---|---|
| "La Segunda Parte no podrá subcontratar, ceder ni traspasar los servicios objeto de este contrato. La Segunda Parte será responsable de la contratación y/o reclutamiento del personal que ofrecerá los servicios y actividades estipulados en la cláusula TERCERA de este Contrato. ..." | "The Second Party may not subcontract, give or transfer the services object of this contract. The Second Party will be responsible for the hiring and/or recruitment of the personnel that will offer the services and activities stipulated in the THIRD clause of this Contract ... ..." |

On or about July 5, 2016, Individual B (who had been a gubernatorial candidate in the Puerto Rico General Elections of 2016) e-mailed JULIA BEATRICE KELEHER to introduce her to Individual C. In or about August 2017, Individual C began working at PRDE without being a paid employee or contractor of PRDE.

JULIA BEATRICE KELEHER attempted to hire Individual C, but was not allowed to do so by senior Puerto Rico government officials.

Sometime after Hurricane Maria, before October 25, 2017, JULIA BEATRICE KELEHER approved an amendment to COLÓN & PONCE's contract to increase its value from $43,550 to $93,550, with a duration until December 31, 2017. She did so, in part to cover the costs of Individual C's services. The amended contract left unaffected paragraph 24 of the original contract, which prohibited COLÓN & PONCE from subcontracting services under the contract. At the time the amended contract was entered into, JULIA BEATRICE KELEHER knew that COLÓN & PONCE would be paying Individual C for her services at PRDE, contrary to the contractual provision forbidding the subcontracting of services.

On the same day that COLÓN & PONCE entered into the amended contract with PRDE (*i.e.*, on October 25, 2017), Individual C signed a contractor agreement with COLÓN & PONCE. Under this agreement, COLÓN & PONCE would pay Individual C $40.00 per hour for work Individual C would perform at PRDE.

After October 25, 2017, COLÓN & PONCE submitted invoices to PRDE for services performed under its contract with PRDE. The invoices included subcontractor services performed by Individual C in violation of PRDE's contract with COLÓN & PONCE.

Sometime in or about December 2017, JULIA BEATRICE KELEHER approved having BDO pay for Individual C's services at PRDE, as the contract with COLÓN & PONCE was to expire. On December 28, 2017, Individual C signed an

independent contractor agreement with BDO, at a rate of $40 per hour and with a starting date of January 2, 2018. From January 2018 to July 2018, BDO submitted invoices to PRDE for services performed under its contract with PRDE, including subcontractor services performed by Individual C.

From in or about October 2017 to in or about July 2018, JULIA BEATRICE KELEHER agreed with others to defraud and deprive PRDE of its moneys in connection with PRDE contracts for professional services with COLÓN & PONCE and BDO. Notwithstanding these contracts' prohibitions on the subcontracting of services, JULIA BEATRICE KELEHER agreed that COLÓN & PONCE and BDO would invoice PRDE for the subcontractor services of Individual C, thereby causing PRDE to pay for said services.

Having agreed with others to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, JULIA BEATRICE KELEHER and others with whom she conspired caused to be transmitted the following emails in interstate commerce:

| Date | Description of E-mails and Attachments |
|---|---|
| 12/22/2017 | E-mail from Individual C to Mayra Ponce, in which Individual C asks Ponce for payment for her services from August until December 2017, under PRDE's contract with Colón & Ponce. |
| 12/26/2017 | E-mail from Mayra Ponce to Individual C, where Ponce explains that Colón & Ponce's contract with Individual C started on October 25, 2017, the same date that the contract amendment between Colón & Ponce and PRDE was effective, and thus Colón & Ponce would pay Individual C only for her services from October 2017 onwards. |
| 02/28/2018 | E-mail from a BDO Internal Accountant to Individual C, informing that the monthly contractor payroll at BDO is paid every 15th day and that when the check is ready, the Internal Accountant sends an e-mail notifying that the check can be picked up in BDO's reception area or sent by mail. |
| 03/02/2018 | E-mail from a BDO Internal Accountant to Individual C, informing of the availability of Individual C's January 2018 check. |
| 03/15/2018 | E-mail from a BDO Internal Accountant to Individual C and other contractors, informing of the availability of the February 2018 checks. |
| 04/13/2018 | E-mail from a BDO Internal Accountant to Individual C and other contractors, informing of the availability of the March 2018 checks. |
| 05/15/2018 | E-mail from a BDO Internal Accountant to Individual C and other contractors, informing of the availability of the April 2018 checks. |

### B. Honest Services Wire Fraud

The *Escuela Especializada Bilingüe Padre Rufo* (hereafter the "Padre Rufo School") was a public school located in Santurce, Puerto Rico. The Padre Rufo School operated under the direction of the PRDE.

The Ciudadela housing complex (hereafter "Ciudadela") was a luxury housing complex adjacent to the Padre Rufo School in Santurce, Puerto Rico. Company A was a for-profit corporation incorporated under the laws of the Commonwealth of

Puerto Rico. Company A was in the business of buying, selling, dealing, renting, and managing real estate.

Company B was a for-profit consulting corporation incorporated under the laws of the Commonwealth of Puerto Rico, and mainly operated out of the same office space as Company A. The president of Company B was the same individual who served as the president of Company A.

Company C was a limited liability company organized under the laws of the State of Delaware which was duly authorized to do business in the Commonwealth of Puerto Rico as of August 20, 2012. Company C owned Ciudadela.

From in or about May 2018 until in or about 2019, in the District of Puerto Rico and elsewhere, JULIA BEATRICE KELEHER did knowingly agree with other persons to devise a scheme and artifice to defraud the people residing in the Commonwealth of Puerto Rico of their right to her honest and faithful services as the Secretary of Education, and to transmit, and cause to be transmitted in interstate commerce emails for the purpose of executing the scheme and artifice to defraud, contrary to 18 U.S.C. §§ 1343 and 1346.

### Purpose of the Conspiracy

It was a purpose of the conspiracy for JULIA BEATRICE KELEHER to use her official position as the Secretary of Education to obtain gifts, payments, and things of value from others, in exchange for signing a letter purporting to "authorize [Company C] to proceed" with the work impacting "a strip of 1,034 square feet of the land surrounding the Padre Rufo School."

## Manner and Means of the Conspiracy

It was part of the conspiracy that co-conspirators facilitated Company C's offer of a lease agreement to JULIA BEATRICE KELEHER, under which terms JULIA BEATRICE KELEHER was allowed to rent an apartment within Ciudadela from in or about May 2018 until in or about July 31, 2018 for the nominal amount of $1.00.

It was further part of the conspiracy that in or about May 2018, other persons, Company A, Company B, and Company C, agreed to give JULIA BEATRICE KELEHER a $12,000 incentive bonus in connection with her purchase of an apartment in Ciudadela.

It was further part of the conspiracy that JULIA BEATRICE KELEHER and co-conspirators would and did misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden acts done in furtherance of the conspiracy, including JULIA BEATRICE KELEHER's receipt of bribes and financial benefits from others.

## Overt Acts

In furtherance of the conspiracy, and to achieve its purpose, JULIA BEATRICE KELEHER and co-conspirators committed overt acts including, but not limited to, the following:

Between in or about May 2018 and in or about June 2018, a co-conspirator caused to be delivered to a PRDE employee who worked at the Padre Rufo School a letter signed by Individual A requesting authorization for Company C to perform work on property that would impact 1,034 square feet of the land surrounding the Padre

Rufo School for the purpose of expanding Antonsanti Street. The letter was dated May 30, 2018.

Between in or about May 2018 and in or about June 2018, a co-conspirator delivered to a PRDE employee who worked at the Padre Rufo School the draft text of a letter addressed to JULIA BEATRICE KELEHER. The letter stated that the PRDE employee had "no objection" to the project which would impact 1,034 square feet of the land behind the library of the Padre Rufo School for the purpose of widening Antonsanti Street. This PRDE employee signed the letter, dated June 8, 2018.

On or about July 17, 2018, a co-conspirator sent via email the draft text of a letter addressed to the president of Company C from JULIA BEATRICE KELEHER, which included exhibits from the Department of Transportation and Public Works (DTOP), the Municipality of San Juan, and the Santurce Plan, purporting to endorse the project to use 1,034 square feet of the land surrounding the Padre Rufo School to widen Antonsanti Street by authorizing Company C "to proceed with" the work. JULIA BEATRICE KELEHER caused the text to be placed on PRDE letterhead largely as drafted by the co-conspirator and affixed her signature.

For the purpose of executing and attempting to execute the scheme and artifice to defraud, JULIA BEATRICE KELEHER transmitted the following emails in interstate commerce:

| Date (on or about) | Interstate Wire |
|---|---|
| May 31, 2018 | Email from JULIA BEATRICE KELEHER to employee of Company A confirming whether she would receive $12,000.00 bonus in connection with her purchase of apartment in Ciudadela. |
| June 23, 2018 | Email from JULIA BEATRICE KELEHER to JULIA BEATRICE KELEHER forwarding documents pertaining to Company C's request to acquire land from the Padre Rufo School. |
| July 17, 2018 | Email from JULIA BEATRICE KELEHER to PRDE employee attaching documents relating to Company C's acquisition of 1,034 square feet of Padre Rufo School. |

For purposes of this plea agreement, JULIA BEATRICE KELEHER acknowledges that it was reasonably foreseeable that the use of email would follow from each scheme described in Counts One and Two of the Information.

Had this matter proceeded to trial, the United States would have presented documentary evidence as well as the testimony of lay witnesses and cooperating witnesses to prove beyond a reasonable doubt that JULIA BEATRICE KELEHER committed violations of 18 U.S.C. § 371 as charged in Counts One and Two of the Information.

Discovery was timely made available to Defendant for review.

W. STEPHEN MULDROW
UNITED STATES ATTORNEY

_____
Seth A. Erbe
Chief, Financial Crimes and Public Corruption
Dated: 6/3/2021

_____
Julia Beatrice Keleher
Defendant
Dated: 6/2/2021

_[signature]_
Alexander L. Alum
Assistant United States Attorney
Dated: 6-4-21

_[signature]_
José A. Ruiz-Santiago
Assistant United States Attorney
Dated: 6-4-21

_[signature]_
Scott Anderson
Assistant United States Attorney
Dated: 6-4-21

_[signature]_
Maria A. Dominguez
Counsel for Defendant
6·2·2021